# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### Hartford Division

IN RE:                                          CHAPTER 13

Walter Hutton *aka* Walter T Hutton**,**

DEBTOR                                    CASE NO. 15-22042

Ocwen Loan Servicing, LLC as servicer for HSBC Bank
USA, N.A., as Trustee for the registered holders of ACE
Securities Corp. Home Equity Loan Trust, Series 2004-
SD1, Asset Backed Pass-Through Certificates,

MOVANT

VS

Walter Hutton *aka* Walter T Hutton,

DEBTOR

Molly T. Whiton**,** TRUSTEE
RESPONDENT

## NOTICE OF CONTESTED MATTER RESPONSE DEADLINE

Ocwen Loan Servicing, LLC, as servicer for HSBC Bank USA, N.A., as Trustee for the

Registered Holders of ACE Securities Corp. Home Equity Loan Trust, Series 2004-SD1, Asset Backed

Pass-Through Certificates (the "Movant") has filed a Motion for Relief from Stay (the "Contested

Matter") with the U.S. Bankruptcy Court.  Notice is hereby given that any response to the Contested

Matter must be filed with the Court no later than April 25, 2016 in accordance with Federal Rules of

Bankruptcy Procedure 2002(a) and 9014.[1]  In the absence of a timely filed response, the proposed order

in the Contested

### [Remainder of Page Intentionally Left Blank]

---

[1] Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail three days are added after the
response date set in this notice.

Matter **may** enter without further notice and hearing, *see*, 11 U.S.C. § 102(1).

Dated: April 4, 2016
     New York, New York

                     **LEOPOLD & ASSOCIATES, PLLC**

                     By: */s/ Michael Rozea*
                        Michael Rozea, Esq.
                        Attorneys for Movant
                        80 Business Park Drive
                        Armonk, NY 10504
                        mrozea@leopoldassociates.com
                        Phone: 914-219-5787 x 140
                        Fax: 914-206-4066
                        Fed Bar ID# ct29256

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### Hartford Division

IN RE:                                                CHAPTER 13

Walter Hutton *aka* Walter T Hutton**,**

DEBTOR                                          CASE NO. 15-22042

Ocwen Loan Servicing, LLC as servicer for HSBC Bank
USA, N.A., as Trustee for the registered holders of ACE
Securities Corp. Home Equity Loan Trust, Series 2004-
SD1, Asset Backed Pass-Through Certificates,

MOVANT

VS

Walter Hutton *aka* Walter T Hutton,

DEBTOR

Molly T. Whiton**,** TRUSTEE
RESPONDENT

### <u>MOTION FOR RELIEF FROM STAY</u>

The undersigned Movant, Ocwen Loan Servicing LLC as servicer for HSBC Bank USA, N.A.,

as Trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2004-

SD1, Asset Backed Pass-Through Certificates a secured creditor of Walter Hutton *aka* Walter T Hutton

(the "Debtor"), by and through its undersigned attorneys, pursuant to 11 U.S.C. § 362(d) and

Bankruptcy Rule 4001, moves this Court for an Order affording relief from the automatic stay imposed

by 11 U.S.C. § 362(a) ("Stay") and as grounds therefore respectfully represents the following to the

Court:

1.      On October 29, 1984 the Debtor executed a promissory note in the original principle amount of

        $61,700.00.[2]   A copy is attached hereto as Exhibit A.

2.      To secure the note, the Debtor mortgaged the premises known as 23-25 Sargeant Street,

        Hartford, CT 06105 (the "Property"). A copy of the mortgage and any assignments thereof is

___

[2] Debtor's obligation under the mortgage fully matured on November 1, 2014.

also annexed hereto as Exhibit A.

3.   The information in this Motion is taken from Ocwen Loan Servicing, LLC's business records regarding the Loan.  The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing, LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing, LLC to make such records.

4.   The amount of the Movant's debt is approximately $31,747.11 pursuant to Movant's Payoff Calculation dated March 11, 2016 plus continuing interest, late charges, collection costs, loan advances, and attorney's fees.

5.   Cause exists for relief from the automatic stay because, as of March 11, 2016, the Debtor is post-petition due for December 01, 2015 or four (04) post-petition payments and the Loan has fully matured. A copy of the Supporting Declaration is annexed hereto as Exhibit B.

6.   Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this 23-25 Sargeant Street, Hartford, CT 06105. Should the automatic stay be lifted/modified by order of this Court, or if this case is dismissed, or if the Debtor obtains a discharge, any state court action will be conducted in the name of  HSBC Bank USA, N.A., as Trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2004-SD1, Asset Backed Pass-Through Certificates, The noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to noteholder or has been duly endorsed.

7.   A copy of the proposed order granting relief from stay is annexed hereto as Exhibit C.

**WHEREFORE**, the Movant requests relief from the Stay by allowing the Movant to proceed

with its state law interests with respect to the Property.

Dated: April 4, 2016
     New York, New York

                                 **LEOPOLD & ASSOCIATES, PLLC**

                         By: _/s/ Michael Rozea_
                               Michael Rozea, Esq.
                               Attorneys for Movant
                               80 Business Park Drive
                               Armonk, NY 10504
                               mrozea@leopoldassociates.com
                               Phone: 914-219-5787 x 140
                               Fax: 914-206-4066
                               Fed Bar ID# ct29256

# EXHIBIT A

**Northeast Savings**

O k#

# ADJUSTABLE RATE NOTE
(Interest Rate Limits)

**This Note contains provisions allowing for changes in my interest rate every year subject to the limits stated in this Note. If my interest rate increases, my monthly payments will be higher. If my interest rate decreases, my monthly payments will be lower.**

...Hartford............ ...Connecticut..........
[City]                    [State]

October 29 ,19 84

23-25 Sargeant Street Hartford Connecticut   06105
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $.... 61,700.00 ........... (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is ...................... NORTHEAST SAVINGS, F.A. .................................................................................. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on that part of principal which has not been paid, beginning on the date I receive principal and continuing until the full amount of principal has been paid.

Beginning on the date I receive principal, I will pay interest at a yearly rate of 12.25.%. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on .... December ........,19. 84. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on ....... November .1.......,20. 14.., I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at ............................... Northeast. Savings,. F.A.,. 50. State. Street,. ......Hartford,. Connecticut....06103........... or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $.. 646.56................. This amount will change if the interest rate that I must pay changes. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of .... November ......................... , 19. 85., and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding .../... percentage points (. 2.50.%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

two and one half

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance of my loan I am expected to owe on the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The rate of interest I am required to pay shall never be increased or decreased on any single Change Date by more than ☐ one percentage point (1.0%) ☒ two percentage points (2.0%) *[Check only one box]* from the rate of interest I have been paying for the preceding twelve months. My interest rate also shall never be greater than ..18.00.%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will mail or deliver to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates of my monthly payments unless the Note Holder agrees in writing to those delays. My partial prepayment will reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**ADJUSTABLE RATE NOTE—Plans A-2 and A-3—1-4 Family—10/83—FNMA Uniform Instrument**

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of . . . . . . . . . . . . . . . . . . 15 . . . . . . . . . . . . calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be . . . . . . . . . . % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on any late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed or delivered to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by mailing it by first class mail or by delivering it to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. THIS NOTE SECURED BY A SECURITY INSTRUMENT**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") with an Adjustable Rate Rider, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument and Rider describe how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

"Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or an interest therin is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Security Instrument.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

Notwithstanding a sale or transfer, Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has released Borrower in writing."

Witness the hand(s) and seal(s) of the undersigned.

*Walter Hutton* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
WALTER HUTTON                                                                      -Borrower

*Cynthia Hutton* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
CYNTHIA HUTTON                                                                     -Borrower

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
                                                                                   -Borrower

*[Sign Original Only]*

AR NOTE—Plans A-2 and A-3—10/83—F'    Uniform Instrument                    202188 - 3/84

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of . . . . . . . 15 . . . . . . . . . . . . . . . . . . . calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be . . . . . . . % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on any late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed or delivered to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by mailing it by first class mail or by delivering it to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. THIS NOTE SECURED BY A SECURITY INSTRUMENT**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") with an Adjustable Rate Rider, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument and Rider describe how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

"**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest therin is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Security Instrument.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

Notwithstanding a sale or transfer, Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has released Borrower in writing."

Witness the hand(s) and seal(s) of the undersigned.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
WALTER HUTTON              -Borrower

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
CYNTHIA HUTTON             -Borrower

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
                                          -Borrower

*[Sign Original Only]*

ALLONGE TO THE NOTE

ACCOUNT NUMBER    ██████████

NAME.             WALTER HUTTON AND CYNTHIA HUTTON

NOTE DATE         10/29/84

ADDRESS           23-25 SARGEANT STREET
                  HARTFORD, CT   06105

LOAN AMOUNT       $61,700.00

                  **HSBC Bank USA, National Association as Trustee,
                  in trust for the registered holders of ACE Securities
                  Corp. Home Equity Loan Trust, Series 2004-SD1,
                  Asset Backed Pass-Through Certificates**

PAY TO THE ORDER OF
WITHOUT RECOURSE  _____

Fleet National Bank, successor by merger to Fleet Bank, National Association, formerly
known as Fleet Bank Of New York, National Association, formerly known as Shawmut Bank,
New York, National Association, formerly known as Shawmut Savings And Loan Association,
formerly known as Northeast Savings Federal Association

BY:  _____
     NICHOLAS J. BADAME, BANKING OFFICER

BOX NUMBER: 028
WAMU Loan#: ██████████

26632-1

VOL 2219 PAGE **271**

_____ [Space Above This Line For Recording Data] _____

# OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on ...October.29......................................,
19..84... The mortgagor is ........................WALTER.HUTTON.and.CYNTHIA.HUTTON......................
.............................................................................................................................................
............................. ("Borrower"). This Security Instrument is given to ...............................
..........................NORTHEAST.SAVINGS,.F.A..........................., which is organized and existing
under the laws of ....the.United.States.of.America........., and whose address is .......50.State.Street.........
................Hartford,.Connecticut..06103............................................................... ("Lender").
Borrower owes Lender the principal sum of ....SIXTY.ONE.THOUSAND.SEVEN.HUNDRED.and.00/100......
......................................... Dollars (U.S. $....61,700.00......). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on ...........................November.1,.2014........................... This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and
the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's
successors and assigns the following described property located in ...........Hartford.................... County, Connecticut:

A certain piece or parcel of land with the buildings and other improvements
thereon situated on the southerly side of Sargeant Street in the Town and
County of Hartford and State of Connecticut and known as Nos. 23-25 Sargeant
Street (formerly known and referred to as Nos. 21-23 Sargeant Street), and
being more particularly bounded and described as follows:

NORTHERLY        by Sargeant Street, thirty-four (34) feet, more or less;

EASTERLY         by land now or formerly of John A. Karaliunas ninety-eight
                 (98) feet, more or less;

SOUTHERLY        by land now or formerly of said Karaliunas thirty-four
                 (34) feet, more or less; and

WESTERLY         by land now or formerly of Arthur Margolis and Rose R.
                 Margolis ninety-eight (98) feet, more or less.

Being the same premises conveyed to Walter Hutton and Cynthia Hutton
by Warranty Deed of Bernice R. Moske dated October 29, 1984, together
with the same rights and containing the same covenants and restrictions
as contained in said deed, which deed is recorded in the Town of Hartford
Land Records.

which has the address of ............23-25.Sargeant.Street................., .........Hartford..........,
                                              [Street]                                            [City]
Connecticut ...............06105.......................... ("Property Address");
                      [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all
the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties,
mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**CONNECTICUT**—Single Family—**FNMA/FHLMC UNIFORM INSTRUMENT**                              110-008 (7/84)

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.**  Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VOL 2219 PAGE 275

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

20. **Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

21. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

22. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] 2–4 Family Rider

[ ] Graduated Payment Rider     [ ] Planned Unit Development Rider

[ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
MITCHELL A. COHEN            WALTER HUTTON       —Borrower

_____    _____ (Seal)
HENRY B. KROEGER III        CYNTHIA HUTTON      —Borrower

[Space Below This Line For Acknowledgment]

STATE OF CONNECTICUT,.......... HARTFORD ................... County ss: Hartford

The foregoing instrument was acknowledged before me this 29th day of October, 1984 ..........
                                                      (date)

by . Walter Hutton and Cynthia Hutton ............................,
                             (person acknowledging)

who acknowledged the same to be their ................ free act and deed.

(Official Seal)

_____
Commissioner of the Superior Court
Notary Public
MITCHELL A. COHEN

My Commission expires:

(Space Below This Line Reserved For Lender and Recorder)

RETURN: SCHATZ & SCHATZ, RIBICOFF & KOTKIN

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**20. Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**21. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**22. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] 2–4 Family Rider

[ ] Graduated Payment Rider    [ ] Planned Unit Development Rider

[ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_MITCHELL A. COHEN_

_HENRY B. KROEGER III_

_Walter Hutton_ _____(Seal)
WALTER HUTTON —Borrower

_Cynthia Hutton_ _____(Seal)
CYNTHIA HUTTON —Borrower

[Space Below This Line For Acknowledgment]

STATE OF CONNECTICUT,.........HARTFORD.................County ss: Hartford

The foregoing instrument was acknowledged before me this .29th. day of .October, 1984...........
(date)

by.......Walter Hutton and Cynthia Hutton...........
(person acknowledging)

who acknowledged the same to be .....their...... free act and deed.

(Official Seal)

_Commissioner of the Superior Court_
_Notary Public_
MITCHELL A. COHEN

My Commission expires:



RECD Oct 30 9 31 AM '84 TOWN & CITY CLERK HARTFORD VOL 2219 PAGE 277
048553

(Space Below This Line Reserved For Lender and Recorder)

RETURN: SCHATZ & SCHATZ, RIBICOFF & KOTKIN

B 36 OF 40

# ADJUSTABLE RATE RIDER
(Interest Rate Limits)

THIS ADJUSTABLE RATE RIDER is made this ............... 29th .... day of ............... October ...., 19 .. 84 ...,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure
Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Adjustable Rate Note to .................... NORTHEAST SAVINGS, F.A. ....................................
............................................. (the "Lender") of the same date (the "Note") and covering the
property described in the Security Instrument and located at:

23-25 Sargeant Street, Hartford, Connecticut  06105
.............................................................................................
[Property Address]

**The Note contains provisions allowing for changes in the interest rate every year subject to
the limits stated in the Note. If the interest rate increases, the Borrower's monthly payments
will be higher. If the interest rate decreases, the Borrower's monthly payments will be lower.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of ... 12.25.. %. Section 4 of the Note provides for changes in the interest
rate and monthly payments, as follows:

**"4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay may change on the first day of ................... November ...., 19 .. 85 ...., and on that day
every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average
yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal
Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable
information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding ................... two and one half
percentage points ( . 2 :50 %) to the Current Index. The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded
amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal balance of my loan I am expected to owe on the Change Date in full on the maturity date at my new
interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly
payment.

**(D) Limit on Interest Rate Changes**
The rate of interest I am required to pay shall never be increased or decreased on any single Change Date by more
than ☐ one percentage point (1.0%) ☒ two percentage points (2.0%) *[Check only one box]* from the rate of interest I
have been paying for the preceding twelve months. My interest rate also shall never be greater than .18..0.. %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes
again.

**(F) Notice of Changes**
The Note Holder will mail or deliver to me a notice of any changes in the amount of my monthly payment before the
effective date of any change. The notice will include information required by law to be given me and also the title and
telephone number of a person who will answer any question I may have regarding the notice."

## B. CHARGES; LIENS
Uniform Covenant 4 of the Security Instrument is amended to read as follows:

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, and other charges, fines and impositions attributable to
the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any, in
the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due,
directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this
paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts
evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument;
provided, that Borrower shall not be required to discharge any such lien so long as Borrower: (a)  shall agree in writing
to the payment of the obligation secured by such lien in a manner acceptable to Lender; (b)  shall in good faith contest
such lien by, or defend against enforcement of such lien in, legal proceedings which in the opinion of Lender operate to
prevent the enforcement of the lien or forfeiture of the Property or any part thereof; or (c)  shall secure from the holder of
such lien an agreement in a form satisfactory to Lender subordinating such lien to this Security Instrument.

If Lender determines that all or any part of the Property is subject to a lien which may attain a priority over this Security
Instrument, Lender shall send Borrower notice identifying such lien. Borrower shall satisfy such lien or take one or more
of the actions set forth above within ten days of the giving of notice.

**ADJUSTABLE RATE RIDER—Plans A-2 and A-3—1-4 Family—10/83—FNMA Uniform Instrument**

**C. NOTICE**

Uniform Covenant 14 of the Security Instrument is amended to read as follows:

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**D. UNIFORM SECURITY INSTRUMENT; GOVERNING LAW; SEVERABILITY**

Uniform Covenant 15 of the Security Instrument is amended to read as follows:

**15. Uniform Security Instrument; Governing Law; Severability.** This form of Security Instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable.

**E. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest therein is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Security Instrument.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof. Notwithstanding a sale or transfer, Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has released Borrower in writing.

**F. COVENANT DELETED**

Non-Uniform Covenant 21 of the Security Instrument ("Future Advances") is deleted.

**G. LOAN CHARGES**

If the loan secured by the Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (2) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**H. LEGISLATION**

If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, the Security Instrument or this Adjustable Rate Rider (other than this paragraph H) unenforceable according to their terms, or all or any part of the sums secured hereby uncollectable, as otherwise provided in the Security Instrument and this Adjustable Rate Rider, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Security Instrument to be immediately due and payable.

IN WITNESS WHEREOF, Borrower has executed this Adjustable Rate Rider.

.................................................... (Seal)
WALTER HUTTON                                                    -Borrower

.................................................... (Seal)
CYNTHIA HUTTON                                                  -Borrower

.................................................... (Seal)
                                                                -Borrower

*[Sign Original Only]*

**C. NOTICE**

Uniform Covenant 14 of the Security Instrument is amended to read as follows:

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**D. UNIFORM SECURITY INSTRUMENT; GOVERNING LAW; SEVERABILITY**

Uniform Covenant 15 of the Security Instrument is amended to read as follows:

**15. Uniform Security Instrument; Governing Law; Severability.** This form of Security Instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable.

**E. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest therein is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Security Instrument.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof. Notwithstanding a sale or transfer, Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has released Borrower in writing.

**F. COVENANT DELETED**

Non-Uniform Covenant 21 of the Security Instrument ("Future Advances") is deleted.

**G. LOAN CHARGES**

If the loan secured by the Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (2) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**H. LEGISLATION**

If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, the Security Instrument or this Adjustable Rate Rider (other than this paragraph H) unenforceable according to their terms, or all or any part of the sums secured hereby uncollectable, as otherwise provided in the Security Instrument and this Adjustable Rate Rider, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Security Instrument to be immediately due and payable.

IN WITNESS WHEREOF, Borrower has executed this Adjustable Rate Rider.

............................................................................ (Seal)
WALTER HUTTON                                                        -Borrower

............................................................................ (Seal)
CYNTHIA HUTTON                                                      -Borrower

............................................................................ (Seal)
                                                                             -Borrower

*[Sign Original Only]*

INVREL

# LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 4/7/2011 which modifies the terms of your home loan obligations as described in detail below:

A.    the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Hartford County, and

B.    the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at

<div align="center">23-25 Sargeant Street HARTFORD, CT 06105</div>

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.    You understand that the Note and Mortgage will not be modified unless and until (i) you receive from Ocwen a copy of this Agreement signed by Ocwen, (ii) you successfully make the initial payment (as defined below) and (iii) Ocwen receives assurance from the title insurance company insuring the lien of the Mortgage or otherwise confirms to Ocwen's satisfaction that the Mortgage (as modified by this Agreement) continues to enjoy lien priority for the full amount of the Note.

2.    As of the date of this Agreement, the parties agree that the new amount payable under your Note and the Mortgage is $22,530.69 ("Unpaid Principal Balance"). Upon modification, your loan will be modified pursuant to the terms of this Agreement (the "Modification") and your Note will become current and not in default.

3.    In order for the terms of this modification to become effective, you promise to make an initial down payment in the amount of $326.31 on or before 4/27/2011, after which you will commence payments of principal and interest in the amount of $079.04 on June 1, 2011 and continuing on the 1st day of each succeeding month until 11/1/2014, at which time a final balloon payment in an amount equal to all remaining amounts under the Note and Modification will be due.

4.    Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be converted to a fixed rate of 2.8750%. This rate will remain in effect until the maturity date of your loan.

5.    Any payments due for taxes and insurance will be your responsibility in addition to the payments of principal and interest required under the terms of this modification.

6.    You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

7.    You understand and agree that:

    (a)    All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law.   Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

    (c)    Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

INV REL

Borrowers Initials _WH_
                    _JH_

INVREL

(d)    Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

(e)    You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

(f)    You understand that this agreement is legally binding and that it affects your rights.  You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(g)    You agree that if any document related to the Note or Mortgage and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of your loan as modified, necessary or required to effectuate the terms and conditions of this Agreement, including as may be necessary to perfect or maintain the lien and security interest of the Mortgage, or is otherwise missing, you will comply with Ocwen's request to execute, acknowledge, initial and deliver to Ocwen any documentation Ocwen deems necessary. All documents Ocwen requests of you under this Section 6(g) shall be referred to as "Documents." You agree to deliver the Documents within ten (10) days after you receive Ocwen's written request for such Documents. You further agree that this Agreement and such Documents, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators and assigns.   Should you elect not to sign any subsequent Agreement or Document, including instances where an error in terms is detected after execution by both parties and a corrected Agreement is provided to you, your loan will revert to the terms of your original Loan Documents.

(h)    That, to the extent required under applicable law, regulation or rule, the implementation of this modification is dependent on Servicer's receipt of an acceptable title endorsement, or similar title insurance product, or subordination agreements from other existing lien holders, as necessary, to ensure that the modified mortgage loan retains its first lien position and is fully enforceable as required.

_____

Ocwen


By: _____

_____

Borrower


_____

Co-Borrower

INVREL

Walter Hutton                                                                4/7/2011
23-25 Sargeant Street
Hartford, CT 06105

## BALLOON DISCLOSURE

Re
    Property Address: 23-25 Sargeant Street, HARTFORD, CT 06105

Dear Borrower (s):

The loan modification which you have applied for contains a balloon provision. This means that even if you make all payments full and on time, the loan will not be paid in full by the final payment date. A single balloon payment will be due and payable in full on 11/1/2014, provided all payments are made in accordance with the loan terms, and the interest rate does not change for the entire loan term. The balloon payment may be more or less depending on your payment history, and, if you have an adjustable rate mortgage, any interest rate changes that occur during the life of your loan. OCWEN, or any lender to which your loan is transferred or assigned, is under no obligation to finance the amount of the balloon payment. The value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

_____                    _____
Ocwen                                        Borrower

By: _____                 _____
                                             Co-Borrower

INV REL                                               **Borrowers Initials** _ __

**Prepared By: Claudy Powell**
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

██████████

██████████

**Attorney code:** █████████

**NOTE:   PLEASE CROSS REFERENCE WITH THAT CERTAIN MORTGAGE/DEED OF TRUST RECORDED ON OCTOBER 30, 1984, IN BOOK 2219, PAGE 271, AS INSTRUMENT 04853, TOWN OF HARTFORD, CONNECTICUT RECORDS.**

## AFFIDAVIT OF LOST ASSIGNMENT

Personally appeared before the undersigned officer authorized by law to administer oaths in said State and County, comes the undersigned, who states on oath as follows:

1.   That I am over 21 years of age, and competent to give this affidavit.
2.   That I currently serve as an officer of **OCWEN LOAN SERVICING, LLC.** A Limited liability company Attorney-in-Fact for HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2004-SD1, ASSET BACKED PASS-THROUGH CERTIFICATES and am personally familiar with the facts set forth herein.
3.   That on or about OCTOBER 29, 1984, WALTER HUTTON AND CYNTHIA HUTTON, executed a Note and a Mortgage/Deed of Trust in favor of NORTHEAST SAVINGS, F.A., which Mortgage/Deed of Trust was recorded on OCTOBER 30, 1984,  IN BOOK 2219,  PAGE 271,   AS INSTRUMENT 04853, HARTFORD Town land records.
4.   That **NORTHEAST SAVINGS, F.A.** subsequently transferred its interest in the above Note and Mortgage/Deed of Trust to **HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2004-SD1, ASSET BACKED PASS-THROUGH CERTIFICATES**.  The original assignment was lost or misplaced before being recorded

1

This affidavit may be relied on by purchasers, sellers, lenders, attorneys and title insurers.

**HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS
OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2004-SD1,
ASSET BACKED PASS-THROUGH CERTIFICATES
BY ITS ATTORNEY-IN-FACT
OCWEN LOAN SERVICING, LLC.**

BY: _____

NAME:  Christina Carter

TITLE:  Account Management, Manager

Signed, sealed and delivered
in the presence of:

(1) _____
Perry Lerner

(2) _____
Harrison Whitaker

STATE OF FLORIDA            }
                           }SS.
COUNTY OF PALM BEACH       }

**POA recorded on: NOVEMBER 03, 2009
Instrument:** ▮▮▮▮▮

     The foregoing instrument was acknowledged, subscribed and sworn before me on MARCH 31, 2011,    by Christina Carter, Account Management, Manager at Ocwen Loan Servicing, LLC.  A Limited liability company Attorney-in-Fact for HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2004-SD1, ASSET BACKED PASS-THROUGH CERTIFICATES, He/She is personally known to me.

_____
Notary Public

**Stephen Lee**

Notary Public State of Florida
Stephen Lee
My Commission EE025759
Expires 09/13/2014

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

In re:

Walter Hutton,
Aka Walter T. Hutton

Chapter:   13

Case No.:   15-22042

Debtor.

---

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _____Christian Lazu_____, declare under penalty of perjury as follows:

1. I am employed as a _____Contract Management Coordinator_____ of Ocwen Loan Servicing,

LLC as Servicer for HSBC Bank USA, N.A., as Trustee for the registered holders of ACE Securities

Corp. Home Equity Loan Trust, Series 2004-SD1, Asset Backed Pass-Through Certificates ("Movant")

and am authorized to sign this supplemental declaration on behalf of Ocwen Loan Servicing, LLC.

This supplemental declaration is provided in support of the Motion for Relief from Stay (the "Motion")

filed contemporaneously herewith.

2.      I make this declaration based upon my review of the records with regard to this

underlying loan transaction, which are kept in the ordinary course of business of Ocwen Loan

Servicing, LLC.  As part of my job responsibilities for Ocwen Loan Servicing, LLC, I have personal

knowledge of and am familiar with the types of records maintained by Ocwen Loan Servicing, LLC in

connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating

those types of records.  I have access to and have reviewed the books, records and files of Ocwen Loan

Servicing, LLC that pertain to the Loan and extensions of credit given to Debtor(s) concerning the

property securing such Loan.

3.  The information in this declaration is taken from Ocwen Loan Servicing, LLC's business

records regarding the Loan.  The records are: (a) made at or near the time of the occurrence of the

matters recorded by persons with personal knowledge of the information in the business record, or from

information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing, LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing, LLC to make such records.

4. The debtor, **Walter Hutton** ***aka*** **Walter T Hutton** ("Debtor") and Co-debtor Cynthia Hutton have executed and delivered or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain Mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

5. As of March 11, 2016, there are one or more defaults in paying Debtor post-petition amounts due with respect to the Note.

6. As of March 11, 2016, the unpaid principal balance of the Note is $ 21,442.75.

7. As of March 11, 2016, the Debtor is post-petition due for December 01, 2015

8. The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor as of March 11, 2016:

| **Number of Missed Payments** | **From** | **To** | **Missed Monthly Principal and Interest** | **Missed Monthly Escrow (if applicable)** | **Monthly Payment Amount** | **Total Missed Payments** |
|---|---|---|---|---|---|---|
| 04 Months | 12/01/2015 | 03/01/2016 | $79.04 | $242.93 | $321.97 | $1,287.88 |
| Less post-petition partial payments (suspense balance): | | | | ($0.00) | | |

**Total:** $1,287.88

9.      Attached hereto as Exhibit 1 is a chart showing the post-petition payments due on the

account as of <u>March 11, 2016</u>.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

Executed this 30th day of March, 2016.

Name:    **Christian Lazu**
Title:    Contract Management Coordinator

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged and sworn before me ___Marlene Saunders___ this 30 day of

March, 2016, by <u>Christian Lazu</u> as a ___Contract Management Coordinator___ of Ocwen Loan Servicing, LLC,

who is personally known to me or who has produced _____ as identification.

_____ **Marlene Saunders**
Notary Public – State of Florida

My Commission Expires: 10/1/19



Notary Public State of Florida
Marlene Saunders
My Commission FF 923278
Expires 10/01/2019

# Exhibit 1

| Name: | Walter Hutton & Cynthia Hutton |
|---|---|
| BK Case Number: | 15-22042 |
| Filing Date: | 11/26/2015 |

| Due Date | Total Payment | | Principal | | Interest | | Escrow | |
|---|---|---|---|---|---|---|---|---|
| 12/1/2015 | $ | 321.97 | $ | 28.54 | $ | 50.50 | $ | 242.93 |
| 1/1/2016 | $ | 321.97 | $ | 28.61 | $ | 50.43 | $ | 242.93 |
| 2/1/2016 | $ | 321.97 | $ | 28.68 | $ | 50.36 | $ | 242.93 |
| 3/1/2016 | $ | 321.97 | $ | 28.75 | $ | 50.29 | $ | 242.93 |
| Total Due | $ | 1,287.88 | $ | 114.58 | $ | 201.58 | $ | 971.72 |

# EXHIBIT C

# Proposed Order

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
Hartford Division

IN RE:                                                    : *CHAPTER 13*

Walter Hutton *aka* Walter T Hutton**,**

DEBTOR                                          : *CASE NO.* 15-22042

Ocwen Loan Servicing, LLC as servicer for HSBC Bank
USA, N.A., as Trustee for the registered holders of ACE
Securities Corp. Home Equity Loan Trust, Series 2004-
SD1, Asset Backed Pass-Through Certificates,


MOVANT

VS

Walter Hutton *aka* Walter T Hutton**,**

DEBTOR

Molly T. Whiton**,** TRUSTEE

RESPONDENT


## PROPOSED ORDER GRANTING OCWEN LOAN SERVICING LLC RELIEF FROM STAY

After notice and a hearing, see Ocwen Loan Servicing, LLC, as Servicer for HSBC Bank USA,

N.A., as Trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series

2004-SD1, Asset Backed Pass-Through Certificates (hereinafter " Movant") Motion for Relief from

Stay,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**- the automatic stay of 11 U.S.C. §

362(a) is modified pursuant to section § 362(d) to permit Movant, and/or its successors and assigns to

commence, continue and prosecute to judgment a foreclosure action affecting the Debtor`s interest in

real property known as 23-25 Sargeant Street, Hartford, CT 06105 and

**IT IS FURTHER ORDERED** that any proceeds resulting from the sale of the real property shall be turned over to the Trustee.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### Hartford Division

IN RE:                                                          CHAPTER 13

Walter Hutton *aka* Walter T Hutton**,**

       DEBTOR                                        CASE NO. 15-22042

Ocwen Loan Servicing, LLC as servicer for HSBC Bank
USA, N.A., as Trustee for the registered holders of ACE
Securities Corp. Home Equity Loan Trust, Series 2004-
SD1, Asset Backed Pass-Through Certificates,

       MOVANT

VS

Walter Hutton *aka* Walter T Hutton,

       DEBTOR
Molly T. Whiton**,** TRUSTEE
       RESPONDENT

### <u>CERTIFICATE OF SERVICE</u>

      Christian Del Toro, states that he is over eighteen (18) years of age and resides in Montclair,

New Jersey, and that on April 4, 2016, the undersigned served the following documents:


1. A copy of the Motion for Relief;
2. A Notice of Contested Matter Response Deadline; and
3. A copy of the proposed order,

by depositing a true copy thereof, properly enclosed in a securely closed and duly post paid wrapper in
a depository regularly maintained by the United States Postal Service in the City of New York, New
York, directed as follows:


**Walter Hutton**
23 Sargeant Street
Hartford, CT 06105

**Suzann L. Beckett**
Beckett Law LLC
543 Prospect Ave
Hartford, CT 06105

**Molly T. Whiton**
10 Columbus Boulevard
Hartford, CT 06106

**U. S. Trustee**
Office of the U.S. Trustee
Giaimo Federal Building
150 Court Street, Room 302


**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on April 4, 2016.

_/s/ Christian Del Toro_
Christian Del Toro